# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LORA CURTIS,

Plaintiff,

v.                                        Civil Case No.: SAG-16-2765

HAROLD E. BUTLER, DDS, *et al.*

Defendants.

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Lora Curtis ("Plaintiff") filed this dental malpractice action against Defendants Harold E. Butler, DDS ("Dr. Butler") and Robinwood Dental Center ("Robinwood") (collectively "Defendants"). Pending before this Court is Defendants' motion for partial summary judgment. [ECF No. 21]. The issues have been fully briefed, [ECF Nos. 22, 23, 24], and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the motion will be granted.[1]

**I. Factual Background**

The facts below are taken in the light most favorable to Plaintiff, the non-moving party. From February 23, 2012 until May 14, 2014, Plaintiff saw Dr. Butler at Robinwood for routine dental services such as prophylaxes, radiographical studies, and restorative dentistry. (Amd. Compl. at ¶¶ 15, 16). On February 7, 2014, Dr. Butler informed Plaintiff that she should have her four third molars (commonly "wisdom teeth") removed. *Id.* at ¶ 17. Plaintiff contends that, at that point in time, only one of the four wisdom teeth, the lower left third molar (#17), "was

---

[1] This case has been referred to me for all proceedings and for the entry of judgment. [ECF No. 9].

slightly problematic." *Id.* at ¶ 18. Despite the absence of any "diagnosis, treatment plan, or other explanation" for the removal of the other three wisdom teeth, Dr. Butler removed all four teeth on March 20, 2014. *Id.* at ¶¶ 19, 20.

Plaintiff's medical records contain limited evidence about how the third molars were removed. *Id.* at ¶ 21. Defendants' notes and files reflect that the four teeth were extracted, but do not indicate the order of extraction or the mechanism or instrument used. *Id.* Robinwood's billing records show that the extractions were "surgical" in nature. *Id.*

As a result of the extractions performed on March 20, 2014, Plaintiff began experiencing numbness and pain in her mouth and tongue area. *Id*. at ¶ 25. The numbness and pain are permanent and interfere with her "ability to taste and enjoy food, and other functions." *Id.*; Pl.'s Opp. [ECF No. 23, 2]. Accordingly, Plaintiff filed the instant lawsuit on August 4, 2016. [ECF No. 1].

In her Amended Complaint, Plaintiff asserts that during the removal of teeth #17 (the lower left third molar) and #32 (the lower right third molar), Defendants failed to take precautions required by the standard of care and severed and/or severely traumatized her left and right lingual nerves. *Id.* at ¶ 22. Specifically, Plaintiff alleges that Dr. Butler "exerted improper force when extracting the teeth, failed to incise the gingiva in the proper way, [and] failed to properly control the dental instruments he used[;]" directly causing injury to Plaintiff's lingual nerves. *Id.* Furthermore, Plaintiff argues that the severing and/or traumatizing of the lingual nerve, especially when it happens bilaterally, does not ordinarily occur outside an act of negligence by the oral surgeon. *Id.* at ¶ 23.

In addition to her claims for dental malpractice regarding the left and right tooth extractions, Plaintiff also asserts additional claims relating to (1) breach of the post-operative

standard of care and (2) lack of informed consent for the surgery. Those claims are not addressed in the instant motion, which seeks partial summary judgment only as to the claim for dental malpractice regarding the alleged trauma to Plaintiff's left lingual nerve.

**II.     Legal Standards**

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Defendants, as the moving party, bear the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011). If Defendants establish that there is no evidence to support Plaintiff's case, the burden then shifts to Plaintiff to proffer specific facts to show a genuine issue exists for trial. *Id*. Plaintiff must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252. Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. Plaintiff "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp*., 107 F. Supp. 2d 669, 671 (D. Md. 1999). If Plaintiff fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-349. In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**III.   Analysis**

Because jurisdiction is based on diversity of citizenship, Maryland substantive law determines the Plaintiff's burden of proof and what constitutes a "material fact." *See Anderson*, 477 U.S. at 248. Under well-established Maryland medical malpractice jurisprudence, Plaintiff must show "both a lack of requisite skill or care on the part of the doctor and that such want of skill or care was a direct cause of the injury; and if proof of either of these elements is wanting the case is not a proper one for submission to the jury." *Nolan v. Dillon*, 261 Md. 516, 533-34 (1971). In *Puppolo v. Adventist Healthcare, Inc.*, the Maryland Court of Special Appeals emphasized the three elements required to establish a *prima facie* case of medical malpractice: (1) the applicable standard of care; (2) that this standard has been violated; and (3) that this violation caused the complained of harm. 215 Md. App. 517, 534 (2013) (quoting *Sterling v. Johns Hopkins Hosp.*, 145 Md. App. 161, 169 (2002)).

Maryland courts have held that expert witness testimony is required to establish medical malpractice in "complicated matters, including human anatomy, medical science, operative procedures, areas of patient responsibility, and standards of care." *Orkin v. Holy Cross Hosp. of Silver Spring*, 318 Md. 429, 433 (1990). Here, Plaintiff relies on the expert testimony of Dr. Lloyd Klausner, DMD, a Board Certified oral surgeon who maintains a private practice in New York City. (Depo. Klausner 16:1-17:10).

4

Dr. Klausner's testimony clearly establishes the first element of a dental malpractice claim – the standard of care. The standard of care is what is "ordinarily exercised by [other oral surgeons] in the profession generally" when it comes to extracting the third molars and protecting the lingual nerves. *Nolan*, 261 Md. at 534. Dr. Klausner states, in his expert opinion, that the standard of care for protecting the lingual nerve when removing the third molars is to (1) utilize a buccal oblique releasing incision also known as a "hockey stick incision;" (2) conduct a subparosteal soft tissue dissection by utilizing a periosteal or Seldin elevator for appropriate protection of the nerve; and (3) section the impacted tooth no more than three-quarters of its buccal lingual width. (Depo. Klausner 59:6-62:2; 90:15-97:6).

After establishing the standard of care, Dr. Klausner testifies about Plaintiff's left side extraction and/or left lingual nerve three times in his deposition. First, Dr. Klausner states generally:

> Injury to the lingual nerve during third molar extraction is a 'potential complication' of surgery; and that injury to the lingual nerve can occur even when the oral surgeon conforms to the standard of care, albeit rarely.

*Id*. at 28:1-29:5.

Second, Dr. Klausner specifically refers to the left lingual nerve in detailing the results of the neurosensory exam he performed on April 1, 2016. *Id.* at 65:3-76:13; Exhibit 6. Based upon the findings from that exam, Dr. Klausner testifies that, in his expert opinion, Plaintiff has a "paresthesia of a varying degree [on the left side] consistent with an injury, [and] most likely without neuroma formation on the left side." (Depo. Klausner 74:1-4).

Third, Dr. Klausner is specifically questioned regarding the mechanism of injury to the left lingual nerve. Dr. Klausner responds:

> I can't tell you the exact mechanism of injury, but I will tell you that her neurosensory status on the left side is just a paresthesia and it is not nearly as

significant as the right side. But, if it was something where instrumentation was not outside the surgical field, you would expect those symptoms to resolve in the, I guess, two-plus years since the surgery.

*Id*. at 103:3-10. Defense counsel asks whether the teeth on the left side needed to be sectioned, and Dr. Klausner states:

Without having a three-dimensional view of it intraoperatively, I would say that appropriately it should have been sectioned. Unless, you know, in this particular patient a buccal trough could have been done and the tooth could have been elevated out superiorly.

*Id*. at 103:13-18. When asked if he knew how Dr. Butler removed the wisdom tooth on the left side, Dr. Klausner testifies as follows:

I believe there's limited information in his deposition testimony. I assume he elevated it out, but I have no – that's all that's indicated here, since he did not say that he used a handpiece. Now, the tooth has to come out either with an elevator – well, it ultimately comes out with an elevator, but whether or not it can come out without sectioning a tooth, you know, can only be determined intraoperatively.

*Id*. at 103:21-104:7.

I'm not able to tell you, [whether the tooth on the left side was sectioned], other than the fact that I would have [sectioned the tooth] for the following reason . . . [and] if I looked at this x-ray I would never take this tooth out without sectioning it . . .

*Id*. at 104:10-22. Defense counsel then asks, "Let's assume [Dr. Butler] just used the elevator and didn't section. What was the cause of the injury on the left side?" *Id*. at 105:5-7. Dr. Klausner responds:

It's either incision design or lack of, you know, proper dissection to get it out. You have to get to the lingual aspect of the tooth to be able to release it from the soft tissues, otherwise any surgeon will tell you that if you don't do that the lingual soft tissues will tear. So, it's just a known part of the procedure. You have got [sic] to release the soft tissues whether you use a drill or not. There's just no other way to take out a tooth.

*Id*. at 105:8-18.  Finally, Dr. Klausner is asked, "Is it possible to injure the lingual nerve during this release of the soft tissues, even if you're doing everything you're supposed to be doing?" *Id*. at 105:19-22.  Dr. Klausner responds, "Theoretically, yes, if the nerve's in an aberrant location.  Theoretically, yes." *Id*. at 106:1-2.

Taking into consideration all of Dr. Klausner's testimony concerning the left lingual nerve, Plaintiff fails to meet her burden to establish two elements of her dental malpractice claim: breach of care and causation.  Dr. Klausner's expert testimony falls short of showing any specific facts indicating Dr. Butler breached the standard of care by exerting "improper force when extracting the teeth, fail[ing] to incise the gingiva in the proper way, [and failing] to properly control the dental instruments he used," as Plaintiff contends in her Amended Complaint.  First, there is no probative evidence that shows Dr. Butler exerted improper force or performed an improper incision when removing the left wisdom tooth.  Dr. Klausner does not reference any x-rays, any evidence in Plaintiff's medical records, or any findings in his neurosensory exam suggesting that Dr. Butler exerted improper force or performed an improper incision during extraction.  Second, Dr. Klausner reaches his conclusion regarding injury to the left nerve by building one inference upon another.  He admits there is not enough evidence in the record to determine if the left third molar was removed by elevation or by sectioning.  Nevertheless, Dr. Klausner assumes the left third molar was removed by elevation, and then infers the injury could have been caused by "either incision design or lack of, you know, proper dissection to get it out." (*Id.* at 105:1-22).  Plaintiff cannot create a genuine issue of material fact "through mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349.

Additionally, Dr. Klausner fails to provide competent evidence to suggest that Dr. Butler breached the standard of care by operating a dental instrument outside of the surgical field. Dr. Klausner explains that the use of a rotary tool outside of the surgical field can be a cause of lingual nerve damage. (Depo. Klausner 81:15-82:1). Rotary instruments are used when sectioning is required to remove a third molar. (*Id*. 77:16-82:18). However, Dr. Klausner fails to offer any evidence, beyond mere speculation, that Plaintiff's left third molar was sectioned. Specifically, Dr. Klausner states, "I assume [Defendant] elevated it out, but I have no – that's all that's indicated here, since he did not say that he used a handpiece…" and "I'm not able to tell you, other than the fact I would have [sectioned the tooth] for the following reasons…" (*Id*. 103:22-104:2; 104:10-11). Since there is no indication in Plaintiff's medical records as to how the left tooth was removed, Dr. Klausner can only give his opinion as to how he would have removed it. Again, without evidence as to how Dr. Butler removed the left tooth, Dr. Klausner cannot opine as to whether or not a surgical rotary instrument was used and therefore cannot state, beyond mere conjecture, that a surgical tool breached the surgical field.

Lastly, in attempting to establish a nexus between Defendants' breach of the standard of care and Plaintiff's injury, Dr. Klausner contends that because the injury did not heal within a two-year period, it must be the result of surgical instrumentation breaching the surgical field. Essentially, Dr. Klausner bases his assertion of negligence on the mere fact that an injury exists, not on any credible evidence showing what kind of surgical tool was used on the left side and where it left the surgical field. In *Nolan v. Dillon*, the Court of Appeals of Maryland reiterated the well-established rule that "the mere fact that an unsuccessful result follows medical treatment is not of itself evidence of negligence." 261 Md. 516, 534 (1971).

In her Opposition to Defendants' Motion for Partial Summary Judgment, Plaintiff argues that the facts of her case are similar to those in *Meda v. Brown*, where the Court of Appeals upheld a jury verdict even though the expert witness could not identify with particularity the specific act of negligence and precise mechanism of injury. 318 Md. 418 (1990). Although *Meda* does allow expert witnesses to infer negligence to some degree, *Meda* is readily distinguishable from this case because of the respective factual predicates for the experts' inferences. Although the two expert witnesses in *Meda* could not testify precisely how plaintiff's arm was positioned during her surgery, they based their opinion regarding the defendant's negligence on "logic rather than speculation or conjecture." *Id.* at 427. One expert testified that although he did not see what happened he could "reconstruct it."[2] *Brown v. Meda*, 74 Md.App. 331, 337-38 (1988). His testimony focused specifically on one probable cause of the nerve injury. He testified "the probable cause of [plaintiff's] ulnar nerve injury was sustained compression of the ulnar nerve for thirty minutes or more during surgery" and "[plaintiff's] arm was strapped on a board, cushion board, but nonetheless pressure was abnormally applied to the ulnar area around the elbow and it was left there in a [sic] period of time and the [plaintiff] was overcome with anesthesia, could not move it, take the pressure off or even report to her doctors that this happened." *Meda,* 318 Md. at 425-26; *see also Brown*, 74 Md.App. at 337. Moreover, both expert witnesses testified that they had "ruled out other possible causes and that the injury could have been caused only by the negligent positioning of the arm." *Brown*, 74 Md.App. at 344. Here, however, Dr. Klausner did not testify about a specific probable cause of the injury, but simply classified his testimony in terms of possibilities. (Depo. Klausner 103:3-10; 104:10-

---

[2] I rely on the legal standard set by the Court of Appeals in *Meda v. Brown,* but include some additional factual details supplied by the Court of Special Appeals in *Brown v. Meda* to explain the reasoning.

22). Dr. Klausner could not state with reasonable probability whether or not the left tooth was sectioned. *Id.* Therefore, unlike in *Meda*, a singular logical inference cannot be made as to the cause of injury. That is, because the method of extraction is unknown, there are three possible causes of the injury; a rotary tool breaching the surgical field, over-judicious elevation, or the nerve being in an aberrant location. *Id.* at 103:1-104:11; 89:8-15; 105:15-106:2. In light of that fact, and Dr. Klausner's testimony that injury to the lingual nerve can occur even when an oral surgeon conforms to the standard of care, Plaintiff has not built an adequate logical bridge to Dr. Klausner's conclusion.

Ultimately, even if all reasonable inferences are drawn in favor of Plaintiff, there is not sufficient evidence to prove her dental malpractice claim as to the left side.[3] Dr. Klausner fails to proffer any evidence beyond mere speculation as to how Defendants breached the standard of care in the removal of the left third molar, and does not establish a nexus between any alleged breach of care and the injury to Plaintiff's left lingual nerve. As a result, Plaintiff fails "to make a showing sufficient to establish the existence of an element essential to [her] case, on which [she] bears the burden of proof." *Miskin*, 107 F. Supp. 2d at 671. Consequently, Defendants are entitled to partial summary judgment.

A separate order follows.

Dated: June 6, 2017

/s/
Stephanie A. Gallagher
United States Magistrate Judge

---

[3] Defendants have not sought summary judgment regarding the surgery on the right side, since Dr. Klausner testified that the right third molar was sectioned and the cause of injury was most likely the result of a rotary instrument leaving the surgical field. (Depo. Klausner 77:1-86:1). Dr. Klausner based his opinion on the presence of a metallic fragment, most likely a piece of bur, found near Plaintiff's right third molar. *Id.* The case will proceed as to that claim and as to Plaintiff's claims regarding lack of informed consent and post-operative negligence/malpractice.